## CHARLES KINSEY *v.* JOSEPH WALLACE, PHILIP L. WEAVER, J. B. WOOSTER, AND GEORGE H. SANDERSON.

MALICIOUS PROSECUTION.—In an action to recover damages for a malicious prosecution, it is not error for the Court to instruct the jury that when the plaintiff first rested his case the Court had decided as a matter of law that there was a want of probable cause, provided the testimony of the plaintiff and the admissions in the pleadings warrant it, and the testimony introduced by the defendant has not in any degree tended to obviate or avoid the want of probable cause made by the pleadings and the plaintiff's testimony.

WHO LIABLE FOR MALICIOUS PROSECUTION.—If a person gives another a *carte blanche* to use his name as plaintiff in prosecuting suits of the character of the one in question, without requiring to be informed as to the facts and circum-

Statement of Facts

stances of the suit, the two to share the compensation between them, such person cannot, if a suit is commenced in his name maliciously and without probable cause, shield himself from damages on the ground of ignorance, or on the pretense that he might have supposed there was a good cause of action.

DISMISSAL OF SUIT.—A dismissal of an action under the circumstances shown by the record in this case, by a stipulation signed by both parties, which provides that each party shall pay his own costs, is such a determination of the action in favor of the defendant as will enable him to maintain an action for malicious prosecution.

EXCESSIVE DAMAGES.—In an action for malicious prosecution, if the damages awarded by the jury are greatly disproportionate to the actual damages, the Court may regard it as sufficient evidence that the verdict was rendered under the influence of prejudice or passion, and direct a release of part of the damages, or award a new trial.

ATTACHMENT.—An attachment will be dissolved, if the debt for which it was procured was secured by a mortgage.

TIME OF BRINGING ACTION.—An action cannot be maintained to recover a debt before it falls due.

EXTENSION OF TIME OF PAYMENT.—The giving of a mortgage to secure a debt, and an agreement to pay the same in gold coin, are a sufficient consideration for an extension of the time of payment.

PLEADINGS.—If the complaint alleges that an act was wrongfully and maliciously done, a denial in the answer that it was wrongfully and maliciously done does not put in issue the doing of the act.

APPEAL from the District Court, Fifteenth Judicial District, City and County of San Francisco.

The plaintiff was indebted to Weaver, Wooster, and Sanderson in the sum of three thousand five hundred and seventy-two dollars and seventy-five cents, and on the 28th day of April, 1866, to secure the payment of the same, made and delivered to Weaver, Wooster & Co. his mortgage upon property in Santa Cruz County, for the payment of the money one year from the date of the mortgage. Weaver, Wooster, and Sanderson, on the 6th day of August, 1866, assigned to defendant Wallace the debt secured by the mortgage. This assignment was made without any consideration being paid by Wallace, who, on the 8th day of August, 1866, commenced an action against the plaintiff to recover the demand, and applied for a writ of attachment upon an affidavit made by John McCombe as agent and attorney in fact of Wallace. The writ of attachment was issued and

levied on the personal property of Kinsey at Pescadero, Santa Cruz County. The defendant moved for a dissolution of the attachment on the ground that the debt was secured by mortgage, and the same was dissolved, and thereupon, on the 14th day of September, 1866, the suit was dismissed, on a stipulation signed by the attorneys of the respective parties, which provided that each party should pay his own costs.

This action was brought by Kinsey to recover damages for a malicious prosecution in the bringing of the suit by Wallace, and the procuring and levy of the attachment. The complaint averred a conspiracy on the part of the defendants, and alleged that the plaintiff had sustained damages in the sum of six hundred dollars in money paid counsel in procuring the dissolution of the attachment, and in time and other expenses about the same matter; and that he had also sustained in injury to his business, his reputation, and his feelings, further damage in the sum of twenty thousand dollars. On the trial the Court charged the jury as follows:

"In most of the cases I have had the honor to submit to your consideration during this term, you were instructed that you were the sole judges of the facts of the case. The case that you are about to take under deliberation, it being for the alleged malicious prosecution of a suit in, and of the process of a writ of attachment issued from this Court, is an exception to the general rule. One of the elements requisite to maintain an action for malicious prosecution is, that there was a want of probable cause for the commencement or prosecution of an action or a process in, or issued from a Court, by reason of which a party is or claims to be injured in damages consequent therefrom.

"The question as to the want of probable cause for such prosecution being a question of mixed law and fact, the common law has established the rule that the Judge before whom such actions are tried shall decide as to the question whether or not the plaintiff, when he closes his evidence in chief, has

shown a want of probable cause for the prosecution of the suit or writ complained to have been illegally or maliciously prosecuted.

"To illustrate: under our laws, as well as, I apprehend, the laws of all civilized countries, no action to recover an indebtedness to become due can be maintained, but the party, owner of a liability which will eventuate in an indebtedness, must await the maturity of the same before he can properly commence or maintain an action thereon.

"Again: our laws provide that in order to entitle a person to sue out an attachment against the property of a person alleged to be his debtor, who is a resident of this State, he must file an affidavit with the Clerk of the proper Court, showing, among other things, that such alleged debtor is indebted to him, specifying the amount of such indebtedness over and above all legal setoffs or counterclaims upon a contract, express or implied, for the direct payment of money, and that such contract was made or is payable in this State, and that the payment of the same has not been secured by any mortgage, lien, or pledge, upon real or personal property. You will readily comprehend that the above propositions involve two questions of fact: whether or not a suit was commenced and an attachment issued. Those facts conceded, then there arise the questions of law: 'Could the suit be sustained?' 'If so, was the attachment properly issued?' Where questions of law and of fact are so blended, and as jurors are not always learned in the law, it was found necessary to submit the question of law and of fact, the want of probable cause for the prosecution, to the adjudication of the Judge before whom the action is tried. Therefore, when the plaintiff first rested his case, it appeared to me that the action complained of was, in fact, commenced; that the time of the payment of the indebtedness sued upon had, for a valuable consideration, been extended until April next; that there was no indebtedness due upon contract, express or implied; that the payment of the alleged indebtedness was

59

originally secured, in whole or in part, by a mortgage upon real property, and that such security had not been rendered nugatory by any act of the plaintiff. I decided, as a matter of law, that there was a want of probable cause for the commencement and prosecution of the action, and the issuance and execution of the writ of attachment.

"To maintain an action for malicious prosecution, it is incumbent for the plaintiff to show that the defendants were actuated by malice in the prosecution of the action or writ of attachment. Malice, in a legal sense, means a wrongful act, done intentionally, without just cause or excuse; wickedness of purpose, malevolent design against another, or a settled purpose to injure another. Malice in the prosecution of an action or a writ, may be inferred from the want of probable cause, where there are no circumstances to rebut the presumption that malice alone could have suggested the prosecution; and malice may also be inferred where the defendants' conduct will admit of no other interpretation, except by presuming gross ignorance. Express malice may be shown by declarations of ill will, or determination to injure, and by any circumstances which tend to show that a person acted wrong intentionally, without just cause or excuse, or with a settled purpose to injure another.

"You, gentlemen, are the sole judges of the credibility of the witnesses who have testified in this case, not only as to those witnesses who have testified, and on whose evidence I predicated my opinion as to want of probable cause, but as to all the witnesses.

"If you believe from the evidence that the defendants conspired to, and did maliciously prosecute the action and writ complained of, you will assess the plaintiff's damages occasioned thereby. In actions of the character under consideration, if malice on the part of the defendant is shown, and the plaintiff is entitled to recover, he is entitled to damages sufficient to indemnify him for the injury to his property, credit, reputation, and feelings, occasioned by the malicious acts of the defendants.

"There is no fixed rule as to the amount of damages a jury should award in these cases; but that question is left to the sound judgment of jurors, who have a right to take into consideration the character and position of the parties, and all the facts and circumstances of the case, as developed by the evidence, as well as the expenses to which he has been necessarily subjected.

"If you give full credence to the evidence of the witnesses on whose statements I found there was a want of probable cause, you will then inquire as to whether the action and writ complained of were prosecuted maliciously, and render your verdict accordingly; otherwise, your verdict will be for the defendants."

The Court gave the following instructions, at the request of the defendants' counsel:

"In this action, before the plaintiff can recover against all or any of the defendants, the plaintiff must show that the action of *Wallace* v. *Kinsey,* and the attachment therein issued, were, first, without probable cause, and second, malicious. If either of these elements should be wanting, the plaintiff cannot recover. The definition of the term 'probable cause' you must take from the Court, and, as applied to the present case, it may be shortly expressed to be, a suspicion founded on circumstances sufficiently strong to justify a reasonable man in believing that the charges he prefers or the statements he makes, as the basis of a particular proceeding, are true. Malice may be inferred from the want of probable cause; but want of probable cause can never be inferred from the most conclusive proof of expressed malice. The inference of malice from the want of probable cause may be repelled by other facts or circumstances inconsistent with that inference.

"7th. If you should determine from the evidence, under the definition given by the Court, that the action of *Wallace* v. *Kinsey* was commenced, and the attachment therein pro-

cured and levied, as alleged by plaintiff, then, in deciding whether the action was commenced and the attachment procured and levied maliciously, you may take into consideration the previous situation of the parties, and all the previous transactions between them, offers of compromise or of settlement, if any were, in fact, made by the plaintiff in this action, or under his authority, and the manner and circumstances under which the action aforesaid was dismissed, and the attachment aforesaid discharged.

"8th. There is a distinction in law between the terms 'wrongfully' and 'maliciously.' An action commenced or an attachment procured or levied improperly, but without malice, whether there is or is not probable cause therefor, is said to be wrongfully commenced, or procured, or levied. If, in the present case, you should consider from the evidence that the action of *Wallace* v. *Kinsey* was wrongfully but not maliciously commenced, and the attachment therein wrongfully but not maliciously procured and levied, your verdict will be for the defendants.

"9th. If, under the evidence and the law, as declared by the Court, you should find that the action of *Wallace* v. *Kinsey* was commenced and the attachment therein procured or levied maliciously and without probable cause, you are then authorized to award to the plaintiff the amount of the actual damage, if any, he has sustained and proved, and a reasonable compensation for injury to his business, credit, reputation, and feelings. But in estimating the amount of damages to be awarded, you are to take into consideration, in the broadest sense, all the facts and circumstances proved in the case, including the situation of the parties and the transactions between them, and the solvency or insolvency of the plaintiff at the time of the commission of the alleged grievances of which he complains.

"10th. In this action, you are authorized to return a verdict in favor of or against all the defendants, or in favor of some one or more of them and against the others.

"11th. In order to justify a verdict for the plaintiff in this

action, you must find that the case of *Wallace* v. *Kinsey* was terminated favorably to the defendant therein, either by the judgment or decision of the Court in the said cause, or by the voluntary action of the plaintiff therein.

"14th. In this action, you are not authorized to draw any distinction between the different kinds of money of which the lawful currency of the United States is composed, and if the plaintiff or any of his witnesses have, in their testimony, attempted to draw any such distinctions, whether in estimating the amount of the plaintiff's business capital, or the value of his business, or the damages, actual or exemplary, if any, which he has sustained—those distinctions you are bound to reject.

"15th. There is a distinction in law between the terms 'wrongfully' and 'unlawfully.' An action commenced or an attachment procured or levied improperly, but without malice, whether there is or is not probable cause therefor, is said to be wrongfully commenced, or procured, or levied. If, in the present case, you should conclude from the evidence that the action of *Wallace* v. *Kinsey* was wrongfully but not maliciously commenced, and the attachment therein wrongfully but not maliciously procured and levied, your verdict will be confined to the actual damage sustained by the plaintiff.

\*          \*          \*          \*          \*          \*          \*

"17th. A partner is not liable for the malice of his copartners, and a principal is not liable for the malice of his agent, although either is responsible if such malice originated with or was actually concurred in by himself. If, therefore, under the instructions and definitions of the Court, you should find that the action of *Wallace* v. *Kinsey* was commenced, and the attachment therein procured and levied without probable cause, and that malice was shown by one or more of the defendants, and not by the others, your verdict will be against those only by whom such malice was exhibited. Any consideration, however small, actually paid, or agreed to be

paid, is sufficient to sustain an assignment of indebtedness actually executed and delivered."

The following instruction, refused by the Court, is the only refusal upon which the defendants assign error, to wit:

"If you believe from the evidence that in the action of *Wallace* v. *Kinsey*, the plaintiff therein did not personally know of or direct the attachment, then he is not chargeable with any malice upon the part of McCombe, if any such malice has been shown; and as against him, if you should conclude that the plaintiff is entitled to a verdict, in estimating the damages the element of malice must be left out of your consideration."

The plaintiff recovered judgment for seven thousand six hundred dollars, and the defendants appealed.

The other facts are stated in the opinion of the Court.

*H. & C. McAllister*, and *H. E. Highton*, for Appellants.

The Court erred in charging the jury as follows:

"Therefore, when the plaintiff first rested his case, it appeared to me that the action complained of was in fact commenced; that the time of the payment of the indebtedness sued upon, had, for a valuable consideration, been extended until April next; that there was no indebtedness due upon contract, express or implied; that the payment of the alleged indebtedness was originally secured, in whole or in part, by a mortgage upon real property, and that such security had not been rendered nugatory by any act of the plaintiff. I decided, as a matter of law, that there was a want of probable cause for the commencement and prosecution of the action, and the issuance and execution of the writ of attachment. * * * If you give full credence to the evidence of the witnesses on whose statements I found there was a want of probable cause, you will then inquire as

to whether the action and writ complained of were prosecuted maliciously, and render your verdict accordingly; otherwise your verdict will be for the defendants."

This charge must have led the jury to believe that, if in fact there was no indebtedness due from Kinsey to Wallace, when the latter instituted his action, or if in fact whatever indebtedness there was at the time of the attachment was secured by mortgage, then there was a want of probable cause. The learned Judge directed their attention exclusively to the questions of fact, and, therefore, in determining whether a want of probable cause had or had not been proved, the consideration of the important element of belief must have been excluded from his own mind.

This Court has defined probable cause to be, not the existence of a particular fact or series of facts, but "a suspicion, founded on circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true." (*Grant* v. *Moore*, 29 Cal. 649.)

Under this definition of probable cause, the Court should have decided, and expressed the decision to the jury: first—whether the defendants, or either of them, believed that the claim against Kinsey at the time of the attachment and action was due and unsecured; and, second—whether such belief, if it existed, had a reasonable foundation. The question was not whether the complaint and affidavit sworn to by McCombe, as Wallace's agent, were in fact true, but whether the defendants were "actuated by an honest and reasonable conviction of the justice of the same."

In the case at bar the Court below committed the precise error for which a new trial was ordered in *Grant* v. *Moore.* The jury were told that when the plaintiff closed his case the Court was satisfied that a want of probable cause had been shown, and that if they believed the testimony from which the Court derived that conclusion, they should find for the plaintiff. They were not informed, however, what the testimony was upon which the conclusion was based, but

were left to make their own selection. When we consider the entire exclusion from the charge of the element of belief, and the stress laid upon the naked facts that the indebtedness was not due, and was secured by mortgage when the proceedings in the name of Wallace were instituted, is it not apparent that the jury seized upon these facts as turning the scale in favor of the plaintiff?

But the error did not end here. The jury were not permitted to inquire whether the testimony upon the part of the plaintiff, on which the Court relied in its opinion that a want of probable cause had been proved, had not been overcome by the testimony in behalf of the defendants. However slight the latter may have been—and, as to some of them at least it was not slight, but conclusive—the defendants were entitled to have it passed upon both by the Court and jury. The statements of plaintiff's witnesses may have been true, and yet their effect destroyed by independent facts proved by the defendants.

The Court also erred in refusing the charge asked by defendants. This instruction is so reasonable in itself, and so directly applicable to the testimony in the case, that it is impossible to perceive upon what ground it was refused. That Wallace was not responsible for any willful or malicious act of his agent, (McCombe,) seems too obvious a proposition to call either for argument or authority to sustain it. (Story on Agency, Sec. 456; *Turner* v. *North Beach and Mission Railroad Company*, 34 Cal. 594.)

It was error for the Court to charge the jury that a dismissal or discontinuance of an action, signed by the attorneys for all the parties thereto, and providing that each party should pay his own costs, was a termination of such action in favor of the defendant therein.

It is well established that, to justify a recovery in an action for malicious prosecution, the termination of the proceeding alleged to have been maliciously prosecuted in favor of the defendant therein must affirmatively appear. (*White* v. *Wyley*, 17 Ala. 169; *DeForest* v. *Baker*, 1 Robertson, N. Y., 703.)

It seems indisputable, that when a defendant prevails in an action, within the meaning of the rule, it must be either through a verdict or judgment, or through a dismissal or discontinuance by the plaintiff alone; and that when, as in this case, the action is terminated by a stipulation to which the defendant himself is a party, "compromise," and not "success," expresses the result.

*Elisha Cook,* for Respondent.

The learned counsel insist that the belief of the defendant was withheld from the jury. It has been repeatedly held that the belief of the party made no difference where all the facts show that there was no cause whatever for the prosecution. In *Jacks* v. *Stimpson,* 11 Ill. 704, Mr. Justice Trumbull uses the following language: "The mere belief of the prosecutor is no defense; he must have had proabable cause for his belief." In *Brooks* v. *Warwick,* 2 Starkie, Lord Ellenborough says: "A commitment may be pressed under circumstances showing such a *crassa ignorantia* as to amount to malice." In *Hall* v. *Suydam,* 6 Barb. N. Y. 89, the Court below charged the jury that the question of probable cause depended not on the actual guilt or innocence of the plaintiff, but on the belief of the prosecutor, etc. The Supreme Court say: "This was, in effect, saying that the defendant was not liable, if he acted in good faith in taking out the warrant. But good faith merely is not sufficient. * * * There must be a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the plaintiff was guilty, to make out such probable cause as will be a defense." In *Winebiddle* v. *Porterfield,* 9 Penn. St., 139, Mr. Justice Coulter says: "The mere belief of the prosecutor is no evidence of probable cause. How are you to test the sincerity of a professed belief, or know that it is not the secret work of a heart to cover malice? There must be some circumstances

which would authorize a reasonable man to entertain a belief."

We think the criticism on the learned Judge's charges is uncalled for and unjust, as no cause for the attachment existed, and even if Wallace acted without express malice, malice is presumed. (*Long* v. *Rogers*, 19 Cal. 321.) But the counsel goes further, and says: "It may be fairly inferred from the record that neither Wooster nor Sanderson knew of the assignment." This suggestion is in keeping with his furious attack upon the charge. The counsel has overlooked the admission in the pleadings, and the positive evidence of McCombe that Weaver, Wooster, and Sanderson employed him to bring the suit, and they paid all the expenses, even up to opposing the discharge of the attachment. But aside from this, the Court charged the jury exactly as the defendants' attorney requested as to what amounts to probable cause, as well as upon the good faith of the parties. The Court, at the defendants' request, charged: "If, in the present case, you should consider from the evidence that the action of *Wallace* v. *Kinsey* was wrongfully but not maliciously procured and levied, your verdict will be for the defendants." Here the Court has given to the jury an instruction, couched in the language of the defendants' counsel, telling them to find a full verdict for the defendants, if they (the defendants) believed they were right, and that they had cause for the attachment. The authorities cited (5 Barb., and 1 Hilliard) are not in any way analagous. The charge in this case was in exact accordance with the principles laid down in *Grant* v. *Moore*, 29 Cal. 652.

But the counsel also complains that the Judge did not tell the jury upon what testimony he based his conclusion that there was a want of probable cause. The Court reiterated to the jury all the facts proved by the plaintiff; but this was not necessary, as the facts were established by the record, and were not disputed or attempted to be disproved at any stage of the case.

The second point made by the defendants is, that the Court

" erred in refusing the following instruction: If you believe from the evidence that, in the action of *Wallace* v. *Kinsey*, the plaintiff therein did not personally know of or direct the attachment, then he is not chargeable with any notice upon the part of McCombe," etc.   The instruction so refused was embraced in another instruction, which was given at the defendants' request, which is a full answer to the defendants' argument upon this point, as follows:

"A partner is not liable for the malice of his copartners, and a principal is not liable for the malice of his agent, although either is responsible if such malice originated with or was actually concurred in by himself.  If, therefore, under the instructions and definition of the Court, you should find that the action of *Wallace* v. *Kinsey* was commenced and the attachment therein procured and levied without probable cause, and that malice was shown by one or more of the defendants, and not by the others, your verdict will be against those only by whom such malice was exhibited."

But independent of the fact that the law upon that question was correctly given, the instruction was objectionable, for the reason that it should have gone further, and have stated that the jury must also be satisfied that Wallace had not concurred in, approved, or adopted such acts after they had been done; and such is the doctrine of the Supreme Court in the case cited, *Turner* v. *North Beach and M. R. R. Co.*, 34 Cal. 594.

This is not a case of principal and agent.  It is a case where McCombe has the right to use Wallace's name for any purpose, Wallace never being the party in interest, and the firm of Weaver, Wooster & Co., to shirk the responsibility, combine with McCombe to institute a suit in the name of Wallace, they, Weaver, Wooster & Co., owning the claim all the time, and they to pay McCombe ten per cent if he makes anything and McCombe to pay Wallace for the use of his

By the Court, CROCKETT, J. :

However plausible the criticism on the passage in the charge of the Court, discussed in appellants' first point, may seem at first blush, it will be found, when considered in connection with the facts admitted by the pleadings, the testimony, and the other instructions given, that there is nothing in the point to justify a disturbance of the verdict. The answers are evasive, and the leading facts must be regarded as admitted by the pleadings, the denials extending only to the wrongful character of the acts alleged in the complaint, and the motives by which the parties were actuated. The denials of the defendant, who answers separately, it is true, are less guarded, and we cannot forbear remarking here, that he displays a recklessness in verifying his pleading, in view of the facts unquestionably established by the evidence, in a high degree reprehensible, but, it must be confessed, too frequently found in the records of our judicial proceedings. But both upon the facts, which must be taken to be admitted by the pleading, and upon the evidence, it clearly appears that the indebtedness upon which the attachment suit was commenced was secured by a mortgage, and the time for payment, under the conditions of the mortgage, had not transpired, and no action upon it could then be maintained. No attachment could be lawfully made under the statute, and, at that time, the parties were in no position to maintain an action to recover the money. The giving of the mortgage and agreement to pay in coin was a sufficient consideration for the extension of the time of payment. The parties may have made an unfortunate arrangement, but they entered into it voluntarily, and were bound by it. There was nothing doubtful in the law, or facts. There was nothing in the testimony upon which to ground "a suspicion founded on circumstances sufficiently strong to warrant a reasonable man in the belief" that there was a cause of action existing upon which an attachment could issue. There was nothing in the testimony to justify the jury, under any charge which the

Court could properly give, in finding differently from what they did upon the questions of fact, disclosing a want of probable cause. The testimony of the defendants did not obviate or avoid, or in any degree tend to obviate or avoid, the case of want of probable cause made by the pleadings and testimony of the plaintiff, but, on the contrary, it went to show still more forcibly and conclusively, that the suit was brought and attachment issued without probable cause. So far as this case is concerned, then, the element of a well grounded belief, which, appellants insist, should have been taken into account in the charge of the Judge, would have been abstract. But, however this may be, there is nothing in the case that could possibly justify a different verdict on this point. Besides, the Court, in a very clear and pointed instruction, given at the defendants' request, which could not be misunderstood, stated the rule with the desired qualification fully and distinctly expressed. The jury could not have been misled in this case by the omission in another part of the charge. The jury could have had no difficulty in understanding the charge, and we have before remarked that there was nothing in defendants' evidence tending to overcome the proof of want of probable cause; but, on the contrary, it was strengthened, and made more clearly manifest. That the defendants, Weaver, Wooster, and Sanderson, were aware of the facts out of which the attachment suit grew, the testimony all shows, so far as it bears on the question, with nothing tending to show that they did not. In addition to the other testimony, Weaver himself, who appears to have been most active in forwarding the suit, in his testimony pointedly says: "I knew the mortgage had been taken from having been told so by my partners." So he and his partners knew the facts. And more, Weaver again says in confirmation of Sharpstein's testimony to the same effect: "I did tell Sharpstein that when we got out the attachment in the suit of Wallace, *we knew it would not stick or hold because we had a mortgage security for the debt.*" So *he*, at least, not only knew the *facts*, but the *law* applicable to the case, and

he says: " *We* knew it," that is, he and his two partners, at least, if he did not intend to include all having anything to do with the matter. It is impossible to come to any other conclusion, from the testimony, than that the other two were equally well informed with himself. While all the circumstances conspire to satisfy the mind of their knowledge, there is nothing tending to or by inference justifying the contrary conclusion. Wooster was also on the stand, but was ominously silent upon the question of his knowledge upon this point. McCombe, one of defendants' witnesses, and the manager of the transaction, also says: "I was employed by *Weaver, Wooster & Co.* to commence this suit, and get out the attachment, and to use the name of Wallace as plaintiff. There was an understanding between Wallace and me, that I might use his name whenever I wished, for *any such purposes*, to give him part of my commissions." Weaver, Wooster & Co. paid the costs, expenses, etc.; found bondsmen, etc., and were the active parties. Starr, defendants' witness, testifies that "between the levy and dismissal of the attachment he had a conversation with *Weaver, Wooster, and Sanderson*" about a compromise. They all, therefore, knew what was going on, and yet the suit was prosecuted till the attachment was dissolved by the Court after a contest upon it. There is nothing from which ignorance on the part of either can possibly be inferred. As to the other defendant, who seems to make a business of lending his name for hire to others to use in prosecuting suits, which the real parties in interest are ashamed, or, for more substantial reasons, decline to prosecute in their own names; who gives his confederate a *carte blanche* to use his name as he sees fit, without informing as to the circumstances or facts, and shares the compensation, he cannot afterward shield himself from the consequences on the plea of ignorance, or on the pretense that he might possibly have supposed there was a good cause of action. Such, according to the uncontradicted testimony of the defendants themselves, was his position in this case. McCombe was authorized "to use his name whenever [he]

I wished, *for any such purpose."* Nor does Wallace deny the authority, but in his answer admits that he commenced the suit, and ostentatiously assumes the responsibility. As to McCombe, the agent, he undertook the business under such circumstances that he was bound to ascertain the facts rather than avoid inquiry. The mortgage, too, was on record, and if he did not in fact know of the mortgage before the commencement of the suit or the actual levy, he was immediately informed of the fact upon the levy being made and before he left Pescadero, and still he did not then abandon the proceeding, but prosecuted it till the Court, upon a contest, dissolved the attachment, and all hopes of success had become dissipated. These facts appear from his own and the defendants' testimony. There is nothing tending in any degree to break the force of these facts, or to justify the jury in finding in McCombe a well grounded suspicion that there was probable cause, and Wallace, under the circumstances of the case, is in no better position than he. There is nothing in the first point to justify a disturbance of the verdict.

There was no error in refusing the instruction mentioned in defendants' second point.

Much that was said with reference to Wallace under the last point applies to this. It is not the ordinary case of principal and agent, where the principal gives authority to the agent to perform his lawful business, and in the performance of that business the agent takes occasion to maliciously injure a third party. In this case one party gives another unlimited authority to use his name at his discretion for the purpose of bringing suits like the one in question, and shares the compensation. Wallace does not repudiate the act after it comes to his knowledge, but avows in his sworn answer that it was performed by his authority. He denies malice, conspiracy, etc., it is true, and sets up a claim as the party who, for his own benefit, independent of any action of Weaver, Wooster & Co., had prosecuted the suit. It turns out in the evidence that he has no real interest in the demand, but is a mere

willing instrument in the hands of other parties for the accomplishment of an unlawful purpose.

The instruction is that "if he did not personally know of or direct the attachment, then he is not personally chargeable with any malice on the part of McCombe, * * * and, as against him, the element of malice must be left out of consideration." This is certainly not correct, thus broadly stated, especially as applied to the testimony of this case. If he authorized others in advance, at their discretion, to bring suits for third parties in his name, for the purpose of maliciously and unlawfully harassing the defendants in such suits, upon the consideration that he should divide the compensation received, the fact that he did not at the time know of or direct any particular proceeding within the general scope of such authority, would not exonerate him from liability for malice in the prosecution. There was enough in the case to require a qualification to this instruction. The jury should also, at least, have been told that they must be satisfied that Wallace had not concurred in, approved, or adopted the acts of McCombe, after they had been done. But the case was fully and clearly stated to the jury upon this point, and in terms as favorable to defendant Wallace as he was entitled to, in another pointed and carefully drawn instruction, given at the request of defendants. The several instructions given at the request of the defendants covered every point in their favor which was omitted or not brought out with sufficient clearness, if any such there was, in the general charge given by the Court.

We think defendants' third point untenable. We do not perceive the materiality of the instruction referred to in appellant's fourth point, and, in our opinion, it could have made no difference to the defendants whether it was given or refused.

The only remaining point worthy of consideration is, whether or not the damages awarded by the jury are excessive, and appear to have been given under the influence of passion or prejudice. Whilst there was much in the conduct

of the defendants, and particularly of the defendant Wallace, as disclosed by the evidence, which was in a high degree reprehensible, and might well have justified the jury in awarding a considerable sum as punitive damages beyond the actual pecuniary loss of the plaintiff, nevertheless, in our opinion, the large sum of seven thousand six hundred dollars, at which the damages were assessed, is out of all just or reasonable proportion to the damages, pecuniary or otherwise, suffered by the plaintiff, or to the offense committed by the defendants. That the actual pecuniary loss to the plaintiff resulting from the attachment was comparatively inconsiderable, is quite apparent from the evidence; but the jury very justly exceeded this sum, on account of the reprehensible conduct of the defendants. We think, however, they exceeded all reasonable limits, and that a verdict for a sum so greatly disproportionate to the actual damage of the plaintiff, under the facts of the case, is of itself sufficient evidence that it was rendered under the influence of passion or prejudice. There is no inflexible or definite rule by which Courts can be governed in reviewing verdicts in such cases; and each case must, in the nature of things, depend more or less on its own circumstances. But whilst we do not desire to restrict juries within very narrow limits, in assessing damages in this class of cases, the ends of justice demand that we should not allow verdicts to stand which so far exceed all reasonable bounds as to raise a just presumption that they proceeded from passion or prejudice. We think this verdict is of that character, and we deem it to be our duty to reverse the judgment for that reason, unless the plaintiff shall remit the excess.

It is, therefore, ordered, that if, within twenty days next succeeding the filing of this opinion, the plaintiff shall file in this Court a stipulation in due form remitting the sum of four thousand six hundred dollars from the judgment in favor of the plaintiff, and consenting to a reduction of said judgment to that extent, the said judgment, in that event,

61

shall be affirmed as to the remainder thereof; but if the plaintiff shall fail or neglect to file said stipulation within the said period above prescribed, then that said judgment be reversed and said cause remanded for a new trial.

SAWYER, C. J., dissenting:

I concur in the views expressed in the leading opinion, except as to the point respecting the reduction of the amount of damages found by the jury. So far as I can judge from the record, the defendants had a perfectly fair trial. The instructions of the Court on the question of damages, given in the clear and accurate language of defendants' own counsel, are all they could reasonably ask. There is nothing in the record tending in the slightest degree to show any misconduct, or that the jury acted under the influence of passion or prejudice, unless it can be inferred from the amount of damages alone.

Seven thousand six hundred dollars, it is true, is a large sum; but from the amount alone, in connection with the evidence, can we say, in the language of the statute, that "excessive damages appear to have been given, under the influence of passion or prejudice?" If not, we are not authorized to disturb the verdict on that ground. There is no well defined, unmistakable, unerring standard by which damages can be exactly measured in such cases, and the Constitution and the law has devolved the duty of determining the amount upon a jury, as being the body best fitted to determine such questions. The amount found might well be reasonable in some cases of such wrongful prosecution, even when the direct, present, actual pecuniary loss does not amount to that sum, and, under the circumstances, the jury thought the amount reasonable in this case. The District Judge before whom the case was tried did not think himself justified in vacating the verdict, and he and the jury had a much better opportunity of appreciating the force of the testimony as it was given before them by the witnesses in

person, than we have upon the necessarily imperfect state-
ment of it in the record. That the plaintiff was illegally
and wrongfully harassed by a suit and attachment which, it
was known to the parties promoting it, could not be main-
tained, and that there was *malice in fact*, clearly appears from
their own evidence. It expressly appears from the declara-
tions of one of them, that Weaver, Wooster & Co. not only
"knew that they had no right to procure it, [the attachment,]
and knew it would not hold, but they were determined not
to be imposed on, and would follow Kinsey up, because they
had been deceived; that they supposed the action last men-
tioned [ *Wallace* v. *Kinsey* ] had already cost Kinsey five or
six hundred dollars, and they would make it cost him more
before they got through with him." The assignment, then,
of a part of a demand secured by mortgage, upon which,
since the extension, an action had not accrued, and upon
which an attachment could not, in any event, legally issue,
and the active prosecution of the suit in the name of an
irresponsible party, having, in fact, no real interest in the
matter, but who seems to make this kind of business a spe-
cialty, and obstructing by an attachment the business and
injuring the reputation of a country merchant, was not for
the *bona fide* purpose of collecting the debt by due course of
law, but the motive declared was to "follow Mr. Kinsey up,
because they had been deceived." They may have had
grounds for complaint, and even disgust, but this proceeding,
from the motives indicated, was unlawful. If they had been
deceived, this fact furnished no justification. The law
recognizes no such mode of redress. The law, in such a
case, justifies considerable latitude on the part of the jury
in estimating the amount of damages. The mitigating, as
well as the aggravating, circumstances, if any there were,
were before the jury. They were carefully instructed by
the Court to take all the circumstances into consideration,
and it does not appear to me that we are authorized to say
that they did not do so, especially as the District Judge does
not appear to have been dissatisfied with the result; and we

should not be authorized to set aside a verdict simply because we might differ from the jury. • *A District Judge*, who hears the evidence and is in a condition to duly appreciate the force of every item of testimony given before him, *would be justified in exercising, and he ought to exercise, a wider discretion in granting new trials than an appellate Court would be justified in exercising in reversing his orders denying them*. I do not perceive any evidence, that the District Court did not, in this instance, properly deny a new trial, but, I take this occasion to observe, that there seems to be an impression to some extent prevailing among District Judges, that their discretion in granting new trials is limited by the same strict and somewhat rigid rules applicable to appellate Courts. If this is so, I think the impression erroneous. The position of *nisi prius* Judges enables them to fully comprehend and appreciate the merits of applications for new trials, and intelligently exercise that legal discretion committed to them, and when in their opinion, the circumstances demand it, they should not hesitate to liberally exercise it to promote the administration of justice.

While I am not quite sure that the damages are not larger than they ought to be, it does not appear to me that there is such a glaring excess as would justify us in saying that the jury must necessarily have been influenced by passion and prejudice. The case, I think, falls within the well established rule stated and followed in the cases of *Weaver* v. *Page*, 6 Cal. 684; *Aldrich* v. *Palmer*, 24 Cal. 516, and cases cited. In *Weaver* v. *Page*, the Court refused to set aside a verdict "for fifteen thousand dollars, which was undoubtedly much more than the pecuniary damage proved," (6 Cal. 682,) and in that case there does not appear to have been *any evidence of malice in fact*. So far as appears, there was but an honest effort to collect a debt by due course of law, after the bill of exchange sued on had been protested in New York, and the defendants had reason to suppose that it would not be paid. It turned out, however, that after the return of the second of exchange protested,

the first was presented and paid, and the *legal* malice was inferred from attaching after payment of the first of exchange in New York. It must be admitted, however, I think, that this case goes to the very verge of the rule requiring verdicts to be sustained by appellate Courts, where the ground of appeal is excessive damages.

This case has no features in common with that of *Sears* v. *Hathaway*, 12 Cal. 279, and is entirely different from the other cases of *Tarbell* v. *Central Pacific R. R. Co.*, *Turner* v. *North Beach and Mission R. R. Co.*, and *Pleasants* v. *North Beach and Mission R. R. Co.*, cited by appellants.

The judgment and order denying a new trial, under the established rule, should, in my opinion, be affirmed.