A. T. & S. F. Rld. Co. v. Wagner.

THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COMPANY v. ROBERT WAGNER.

1. RAILROAD EMPLOYÉ, *Risks of.* An employé of a railroad company, by virtue of his employment, assumes all the ordinary and usual risks and hazards incident to his employment.

2. RAILROAD MACHINERY; *Company, not Insurer.* As between a railroad company and its employés, the railroad company is not an insurer of the perfection of any of its machinery, appliances, or instrumentalities for the operation of its railroad.

3. ORDINARY CARE *Toward Employé.* As between a railroad company and its employés, the railroad company is required to exercise reasonable and ordinary care and diligence, and only such, in furnishing to its employés reasonably safe machinery and instrumentalities for the operation of its railroad.

4. DUTY OF COMPANY; *Presumption.* It will be presumed, in the absence of anything to the contrary, that the railroad company performs its duty in such cases, and the burden of proving otherwise will rest upon the party asserting that the railroad company has not performed its duty.

5. ACTION BY EMPLOYÉ *Against Company; Burden of Proof.* And where an employé seeks to recover damages for injuries resulting from insufficiency of any of the machinery or instrumentalities furnished by the railroad company, it will not only devolve upon such employé to prove such insufficiency, but it will also devolve upon him to show either that the railroad company had notice of the defects, imperfections, or insufficiencies complained of, or that by the exercise of reasonable and ordinary care and diligence it might have obtained such notice.

6. —————— *Evidence.* And proof of a single defective or imperfect operation of any of such machinery or instrumentalities resulting in injury will not of itself be sufficient evidence, nor any evidence, that the company had previous knowledge or notice of any supposed or alleged defect, imperfection or insufficiency in such machinery or instrumentalities.

7. NEGLIGENCE; *Notice of Defective Machinery.* As between a railroad company and its employés, the railroad company is not necessarily negligent in the use of defective machinery, not obviously defective, but it is negligent in such cases only where it has notice of the defects, or where it has failed to exercise reasonable and ordinary diligence in discovering them and in remedying them.

8. VERDICT, *Not Sustained; Reversal.* Whenever the verdict of a jury, or any necessary and material fact involved in the verdict, is not sustained by the evidence, or by any sufficient evidence, the supreme court will set it aside and grant a new trial, although the verdict may have been approved by the trial court.

*Error from Reno District Court.*

ACTION brought by *Wagner* against *The Railroad Company*, to recover damages for personal injuries. Trial at the January Term, 1884, and judgment for plaintiff for $2,000 and costs. *The Company* brings the case here. The opinion states the material facts.

*A. A. Hurd, John Reid,* and *W. C. Campbell,* for plaintiff in error; *Geo. W. McCrary,* general counsel.

*Whiteside & Hutchinson,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by Robert Wagner against the Atchison, Topeka & Santa Fé Railroad Company, for damages for personal injuries alleged to have resulted from the negligence of the defendant. The case was tried before the court and a jury, and judgment was rendered in favor of the plaintiff and against the defendant for $2,000 and costs of suit; and from this judgment the defendant by petition in error appeals to this court.

It appears from the record brought to this court that on December 23, 1881, and prior thereto, Wagner was in the employment of the railroad company as a yard switchman at Nickerson, Kansas. His duties as switchman required him to couple and uncouple cars, make up trains, etc. Nickerson being the end of a division of the defendant's railroad, it was customary at that place to take off a car or coach from the western-bound passenger train which arrived at that place each evening, and to put it on the eastern-bound passenger train the next morning. A switch engine was used for this purpose, and among the duties performed by Wagner were to couple and uncouple the passenger coach to and from this engine. The passenger coaches were equipped with a kind of draw-bars usually known as "the Miller coupling," an invention by which coaches are coupled to each other automatically, without the use of links or pins. Links or pins, however,

may be used in coupling rolling stock equipped with this kind of coupling, and are so used whenever a coach equipped with this kind of coupling is coupled to another coach or car or engine not so equipped. The switch engine was equipped with an oval-faced draw-head, with two or three slots or shelves into which a link might be placed for coupling. One witness testified that this contrivance for coupling was called a "Hinckley switch-engine draw-head." In coupling or uncoupling coaches equipped with the Miller coupling to an engine equipped as this engine was, it was necessary to use a link and pins. On the morning of December 23, 1881, Wagner was ordered by J. W. Reed, the yard-master, to get on the switch engine, which had already been coupled to the passenger coach and was standing on the side track, and to place the passenger coach in the eastern-bound passenger train. Wagner got on the step or platform of the engine, and between the engine and the coach, for the purpose of obeying this order. The engine and coach were then moved by the engineer in obedience to a signal from Wagner, and when they arrived at the proper place Wagner endeavored to uncouple the engine from the passenger coach, and in doing so he attempted first to pull the pin from the draw-head on the engine, but finding that the head of the pin was broken and the pin difficult of removal, he then reached over to the draw-bar of the passenger coach and pulled that pin. The engine at the time was pushing against the coach, and the draw-bar of the coach slipped by the draw-head of the engine, and catching the plaintiff's leg broke it about two or three inches above the knee. This incapacitated him for work for a long time, and he endured pain and incurred expense, but his leg finally got to be nearly as well and sound as before the accident. No negligence is imputed to the yard-master or to the engineer, and it is not claimed that the engine or the passenger coach was in any manner defective or out of order, except the defects in the coupling-pins, of which the plaintiff had full and complete knowledge, and the spring or appurtenances connected with the draw-bar of the passenger coach, of which the plaintiff did

not have any notice or knowledge. Indeed, no person is shown to have had any notice or knowledge of any defect in such draw-bar, or in anything connected therewith; and it is certainly at least very doubtful whether there was in fact any such defect. The jury, however, upon very weak evidence found that there was such a defect; and for the purposes of this case we shall assume that there was.

The question then arises, is the defendant liable because of such defect, and upon the other facts of this case? We think not. It must be remembered that the question in this case does not arise between the railroad company and a passenger, or between the railroad company and some third person having no connection or contract relation with the railroad company; but it arises between the railroad company and one of its employés, who by reason of his employment has assumed all the ordinary risks and hazards incident to his employment. A passenger pays to be protected from all the risks and hazards incident to the operation of a railroad, from which the railroad company can by the highest degree of skill and care protect him; while an employé of the railroad company is paid to assume all the risks and hazards incident to his employment; and a third person, having no connection or contract relation with the railroad company, stands upon his original legal rights, being neither protected by the railroad company nor assuming any of the dangers, risks or hazards incident to the operation of the railroad; and while such third person may not be placed in the same highly favorable situation with regard to dangers, risks and hazards as a passenger is, yet he is placed in a much more favorable situation than a mere employé of the railroad company, who is paid to take the risks and hazards of his employment. Hence, differences in the rules governing these various relations must be expected.

Mr. Thompson, in his work on Negligence, uses the following language:

"In an action by an employé against his employer for injuries sustained by the former in the course of his employment, from defective appliances, the presumption is that the appli-

ances were not defective; and when it is shown that they were, then there is a further presumption that the employer had no notice or knowledge of this fact, and was not negligently ignorant of it." (2 Thompson on Negligence, p. 1053, § 48.)

Mr. Wood, in his work on Master and Servant, uses the following language:

"The servant seeking to recover for an injury, takes the burden upon himself of establishing *negligence on the part of the master* and due care on his own part. And he is met by *two* presumptions, *both* of which he must overcome in order to entitle him to a recovery: First, That the master has discharged his duty to him by providing suitable instrumentalities for the business, and in keeping them in condition; and this involves proof of something more than the mere fact that the injury resulted from a defect in the machinery. It imposes upon him the burden of showing that the *master had notice of the defect*, or that in the exercise of that ordinary care which he is bound to observe he would have known it. When this is established, he is met by another presumption, the force of which must be overcome by him, and that is *that he assumed all the usual and ordinary hazards of the business*," etc. (Wood on Master and Servant, § 382.)

Shearman and Redfield, in their work on Negligence, use the following language:

"In actions brought by servants against their masters, the burden of proof as to the master's knowledge or culpability in lacking knowledge of the defect which led to the injury, whether in the character of a fellow-servant or in the quality of materials used, rests upon the plaintiff." (Shearman and Redfield on Negligence, § 99.)

Mr. Pierce, in his work on Railroads, uses the following language:

"The company's knowledge of a defect must be proved in order to make it liable for the consequences, but such knowledge may be shown by circumstances, as the length of time it existed before the injury, or by a notice given to an employé who had an express or implied authority to receive it. The fact that the servant complained of a defect in the road or its appointment is admissible in proof of the company's knowledge." (Pierce on Railroads, 373.)

"The burden of proof is on the servant to show that the

company was negligent, and that his own negligence did not contribute to the injury; and where the injury was caused by defects in the road or its appointments, that the company knew or ought to have known them, or negligently employed incompetent persons to construct or repair them; and where it is alleged to have been caused by the incompetency of fellow-servants, that the servant was incompetent, and the company knew or ought to have known of such incompetency; and he must show that he did not himself, before the injury, know of such defects or incompetency. The company's negligence is not to be inferred from the fact of injury by a collision of trains, or by an explosion of engines, even in jurisdictions where negligence is implied from the collision or explosion in case of injuries to passengers or third persons." (Pierce on Railroads, 382.)

The supreme court of Iowa, in a recent decision, uses the following language:

"As to driving in the draw-bar, there is no evidence whatever that any of the officers of the defendant had any knowledge that the draw-bar was in any way defective, or that it was defective in its original construction. Without some evidence on this question, there could be no recovery for that defect, if there was any defect." (*Skellinger v. C. & N. W. Rly. Co.*, 61 Iowa, 714, 715; same case, 12 Am. & Eng. Rld. Cases, 206, 207.)

There is a vast number of other cases announcing the same principles and sustaining the elementary works above cited, so far as we wish to apply them to this case, among which are the following: *De Graff v. N. Y. C. & H. R. Rld. Co.*, 76 N. Y. 125; *Warner v. E. Rly. Co.*, 39 id. 468; *Elliott v. St. L. & I. M. Rld. Co.*, 67 Mo. 272; *M. &c. Rld. Co. v. Thomas*, 42 Ala. 672; *C. C. & I. Rly. Co. v. Troesch*, 68 Ill. 545; *C. & A. Rld. Co. v. Platt*, 89 id. 141; *I. B. & W. Rld. Co. v. Toy*, 91 id. 474; *E. St. L. P. & P. Co. v. Hightower*, 92 id. 139; *Wonder v. The B. & O. Rld. Co.*, 32 Md. 411; *Ballou v. C. M. & St. P. Rly. Co.*, 54 Wis. 257; same case, 5 Am. & Eng. Rld. Cases, 480, and note, 504; *Smith v. C. M. & St. P. Rly. Co.*, 42 Wis. 520; *Flannagan v. C. & N. W. Rly. Co.*, 50 id. 462; *Ladd v. N. B. Rly. Co.*, 119 Mass. 412; *Quincy Mining Co. v.*

*Kitts,* 42 Mich. 34; *C. & I. C. Rly. Co. v. Arnold,* 31 Ind. 174; *M. P. Rly. Co. v. Lyde,* 57 Tex. 505; same case, 11 Am. & Eng. Rld. Cases, 188.

We think the following principles are deducible from the foregoing authorities, and are sound law: (1.) An employé of a railroad company, by virtue of his employment, assumes all the ordinary and usual risks and hazards incident to his employment. (2.) As between a railroad company and its employés, the railroad company is not an insurer of the perfection of any of its machinery, appliances or instrumentalities for the operation of its railroad. (3.) As between a railroad company and its employés, the railroad company is required to exercise reasonable and ordinary care and diligence, and only such, in furnishing to its employés reasonably safe machinery and instrumentalities for the operation of its railroad. (4.) It will be presumed, in the absence of anything to the contrary, that the railroad company performs its duty in such cases, and the burden of proving otherwise will rest upon the party asserting that the railroad company has not performed its duty. (5.) And where an employé seeks to recover damages for injuries resulting from insufficiency of any of the machinery or instrumentalities furnished by the railroad company, it will not only devolve upon such employé to prove such insufficiency, but it will also devolve upon him to show either that the railroad company had notice of the defects, imperfections or insufficiencies complained of, or that by the exercise of reasonable and ordinary care and diligence it might have obtained such notice. (6.) And proof of a single defective or imperfect operation of any of such machinery or instrumentalities resulting in injury will not of itself be sufficient evidence, nor any evidence, that the company had previous knowledge or notice of any supposed or alleged defect, imperfection or insufficiency in such machinery or instrumentalities. (7.) As between a railroad company and its employés, the railroad company is not necessarily negligent in the use of defective machinery, not obviously defective, but it is negligent in such cases only

where it has notice of the defects, or where it has failed to exercise reasonable and, ordinary diligence in discovering them, and in remedying them.

The decisions in this state are, so far as they go, in consonance with the decisions elsewhere. (*Kelly v. Detroit Bridge Works,* 17 Kas. 558, 562; *M. P. Rly. Co. v. Haley,* 25 id. 35, 56, 62, 63; *A. T. & S. F. Rld. Co. v. Holt,* 29 id. 149; *Jackson v. K. C. L. & S. K. Rld. Co.,* 31 id. 761; same case, 3 Pac. Rep. 501.)

In the present case, as no negligence is imputed to the railroad company, except in using a passenger coach with a drawbar connected with a defective spring, or with some other defective appliance, and as it is not shown that the railroad company, or any of its employés, or indeed any other person, had any knowledge or notice of such defect prior to the occurrence of the accident upon which the plaintiff's action is founded, it cannot be said that any negligence whatever upon the part of the railroad company has been shown; and the verdict and judgment in the court below should have been rendered in favor of the railroad company, but they were not; but, on the contrary, both were rendered against the railroad company. After the verdict was rendered the defendant moved the court to set it aside and for a new trial, upon various grounds, among which were the grounds that the verdict was not sustained by sufficient evidence, and was contrary to law; but the court overruled the motion, and rendered the judgment aforesaid. Of course by this ruling the court approved the verdict of the jury. But as the verdict and judgment are not sustained by sufficient evidence, although approved by the trial court, it becomes the duty of this court to set them aside and grant a new trial. It has frequently been held in this court that whenever the verdict of a jury, or any necessary and material fact involved in the verdict, is not sustained by the evidence, or by any sufficient evidence, the supreme court will set it aside and grant a new trial, although the verdict may have been approved by the trial court. (*Backus v. Clark,* 1 Kas.

304; *Ermul v. Kullok,* 3 id. 499; *Howe v. Lincoln,* 23 id. 468; *Irwin v. Thompson,* 27 id. 643; *U. P. Rly. Co. v. Dyche,* 28 id. 200, 206; *Johnson v. Burns,* 29 id. 81, 86; *Reynolds v. Fleming* 30 id. 106; *Babcock v. Dieter,* 30 id. 172.)

The judgment of the court below will be reversed, and the cause remanded for a new trial.

All the Justices concurring.