## THE MISSOURI PACIFIC RAILWAY COMPANY v. JOHN T. DWYER.

1. CAR REPAIRER, *Not Coëmployé with Brakeman.* A car repairer or inspector in the employment of a railway company is not a coëmployé or fellow-servant with a brakeman operating the brakes of a car, within the meaning of that rule of the common law which exempts the master from liability for negligence between coëmployés or fellow-servants.

2. DEFECTIVE BRAKE-STAFF; *Brakeman, Injured; Liability.* A railway company is liable to a brakeman for injuries received in the performance of his duties through the negligence of the company's inspector of machinery in failing to discover and remedy a defect in a brake-staff, when the defect by the exercise of reasonable and proper diligence might have been known before the infliction of the injuries.

3. ———— *Excessive Verdict.* The plaintiff, who was twenty-four years of age, and by occupation a brakeman in the employ of a railway company, received a personal injury resulting in the amputation of his leg about ten inches below the knee, while attempting to set a brake upon one of the cars of his train, in consequence, as he alleged, of the negligence of the company. There was no evidence in the case as to what the plaintiff was earning at the time of the injury,

or that he had paid out or contracted to pay out anything by rea son of the injury, or that he lost any time thereby, or to what extent his liability to earn money was impaired by the injury received. No allowance was made for his pain and suffering. *Held*, That the verdict returned by the jury for ten thousand dollars as damages is excessive.

4. ———— *Court May State Excess.* Where a judgment is reversed upon the sole ground that the damages awarded are excessive, this court may indicate the excess, and allow it to be remitted and judgment entered for the remainder.

## *Error from Wyandotte District Court.*

ON June 30, 1883, *John T. Dwyer* filed the following petition in the district court of Wyandotte county against *The Missouri Pacific Railway Company:*

"Plaintiff for his cause of action states that the defendant is, and was at the date hereinafter mentioned, a railroad corporation operating, running and maintaining a railroad, and doing business in the state of Kansas from the state line between Missouri and Kansas, at the Missouri river, to Atchison, in said state of Kansas— its said railroad passing and being operated in and through the county of Wyandotte, in said state of Kansas; that on the 11th day of December, 1882, plaintiff was in the employ of defendant as a brakeman on its said railroad; that it was defendant's duty then and there to furnish plaintiff with suitable cars, machinery and appliances upon and by means of which, as such employé, he might safely discharge his duties by the use of ordinary care and prudence; that on said date defendant, disregarding its duty, negligently and carelessly placed in the train on which plaintiff was engaged to perform services as such brakeman, a car having an insecure, unsafe and defective brake-staff, in this— that said brake-staff was cracked and broken, all of which facts were known, or by the use of ordinary care and prudence might have been known, to defendant, and were unknown to plaintiff; that plaintiff, while at the place on said car which his duty as such employé required him to be, on the night of said December 11th, near Pomeroy, a station on defendant's said railroad, and while then and there in the careful performance of his duty in attempting to set the brake having said defective, insecure and unsafe brake-staff, said brake-staff broke and separated, precipitating the plaintiff violently to and upon the track of said railroad, the trucks of one of the cars passing over

his right leg, then and there breaking, crushing and mangling it to such an extent as to render its amputation necessary to save his life, which was done; that plaintiff has suffered and still suffers great pain, and is permanently disabled by reason of said injury.

"Wherefore, plaintiff says he is damaged in the sum of twenty-five thousand dollars, for which sum and costs he demands judgment."

On November 26, 1884, the defendant filed the following amended answer:

"Now comes said defendant, and for its amended answer to the petition of plaintiff filed herein, says:

"1. It denies each and every allegation, statement and averment in said petition contained not hereinafter expressly admitted and confessed.

"2. For further answer this defendant says, that if the said plaintiff sustained any injury, as alleged in his said petition, such injury was the result wholly of his own carelessness and negligence, and his failure to exercise reasonable and ordinary care and prudence under the circumstances, and not by reason of any negligence on the part of said defendant, or any of its servants, agents or employés other than the said plaintiff; that the failure of the said plaintiff at the time and under the circumstances to exercise reasonable, ordinary and proper care, was the sole cause of all injury by him at the time sustained.

"3. Defendant further says, that said car from which it is alleged that said John T. Dwyer, the plaintiff, was thrown at the time he received the injuries complained of, did not belong to this defendant company, but was a foreign car, and had only been received by this defendant for the purpose of transporting the contents thereof, and that the defect, if any, in said car, was a latent defect and not susceptible of ascertainment by the exercise of reasonable and ordinary care, and was not a defect known to the said defendant or any of its officers, agents or employés other than the plaintiff, and could not have been discovered by the exercise of reasonable and ordinary care; and that on said 11th day of December, 1882, and prior and subsequent thereto, this defendant had in its employ competent and careful inspectors of cars, stationed at the state line, near Kansas City, Missouri, and if there was any defect in said car which resulted in the injury to the plaintiff complained of, such defect was a latent one and could

not by said inspectors have been discovered by the exercise of reasonable and ordinary care and diligence; that said defendant used reasonable and proper care in having all cars by it received from other companies—as well as its own cars—inspected at all proper hours, and used all reasonable and proper diligence in having the said car, in plaintiff's petition alleged to have been defective, inspected, and the same was in a proper and safe condition for all purposes for which the same was being used at the time of such injury. .

"Wherefore, defendant prays judgment for costs of suit."

On December 2, 1884, the plaintiff filed his reply, as follows:

"Now comes the above-named plaintiff, and for reply to the amended answer of the defendant filed herein, says he denies each and every allegation and averment therein contained inconsistent with the averments of his petition, and prays judgment as in his petition prayed."

Trial at the December Term, 1884. The jury returned a verdict for plaintiff, and assessed his damages at the sum of ten thousand dollars. The jury also answered the following particular questions of fact submitted by the plaintiff:

"1. Was the plaintiff injured on the 11th day of December, 1882, on the line of the Missouri Pacific railroad in Kansas? A. Yes.

"2. Was said injury caused by a defective brake-staff on one of the defendant's cars in Kansas on its road? A. Yes.

"3. Was that defect such an one as was known to the defendant, or could have been known by the exercise of ordinary care? A. Yes.

"4. Did the plaintiff, by any neglect or fault of his, contribute to the injury? A. No.

"5. Was the plaintiff at the time of the injury in the usual, proper and careful discharge of his duty? A. Yes."

And the jury also answered the following particular questions of fact submitted by the defendant:

"1. On December 11, 1882, was the plaintiff injured by reason of falling from car of defendant, marked M. K. & T. coal car No. 4657? A. Yes.

"2. Was said fall of plaintiff occasioned by the breaking

of the brake-staff on said car just below the ratchet-wheel of said brake? A. Yes.

"3. Was said car No. 4657 rebuilt at Sedalia, Mo., in April, 1880? A. Generally rebuilt.

"4. When said car had been so rebuilt in April, 1880, was it then in apparent good order and proper condition? A. Yes.

"5. Was it thereafter used by the defendant in the prosecution of its business? A. Yes.

"6. On September 13, 1882, was said car repaired at the shop of the defendant at Atchison, Kansas? A. Yes.

"7. If question 6 is answered 'Yes,' state in what respect the same was so repaired at Atchison, Kansas, on September 13, 1882. A. By increasing the box or bed of the car from 16 to 24 inches in depth.

"8. After being so repaired in Atchison on September 13, 1882, was said car in proper condition and in good repair so far as the use of reasonable and ordinary care could discover? A. No evidence in regard to the condition of the brake.

"9. If question 8 is answered 'No,' state in what respect said car was not in proper condition after being so repaired at Atchison, Kansas, September 13, 1882. A. Same as No. 8.

"10. If question 9 is answered by stating that said car was not in proper condition after being so repaired September 13, 1882, state if such improper condition was known to any employé of the defendant company. A. No evidence to the jury.

"11. If question 10 is answered 'Yes,' give name of such employé who had such notice. A. No answer.

"12. On December 10th and 11th, 1882, was said car No. 4657 loaded with coal at Rich Hill, Mo., which coal was to be delivered at Leavenworth, Kansas? A. Yes.

"13. Did said defendant then have in its employ at Rich Hill, Missouri, careful and competent car inspectors? A. No.

"14. Was it the custom of said inspectors to inspect all cars of defendant taken in train at said station? A. Yes.

"15. Did said car 4657 on its way to Leavenworth, Kansas, with said coal, pass through Pleasant Hill, Missouri? A. Yes.

"16. At said Pleasant Hill, Missouri, did defendant have in its employ careful and competent car inspectors? A. If so, they failed to perform their duty.

"17. Was it the custom of said inspectors to inspect all cars of defendant which passed through said Pleasant Hill, Missouri? A. Yes.

"18. On its way to Leavenworth, Kansas, on December 11,

1882, did said car pass through Kansas City, Missouri? A. Yes.

"19. At Kansas City, Missouri, did defendant at said time have in its employ careful and competent inspectors of cars? A. No.

"20. Was it their custom to inspect all cars which passed through Kansas City, Missouri, on defendant's road? A. No.

"21. At Pomeroy station, on the night of December 11, 1882, did said brake-staff break about five-eighths of an inch below the ratchet-wheel on said brake? A. Yes.

"22. When fastened to the car, how far was said ratchet-wheel above the ground? A. About four feet.

"23. About how many inches did said ratchet-wheel project out from the brake-staff? A. About three and one-half inches.

"24. Was said brake-staff fastened to the end of the car by an iron clasp below the ratchet-wheel? A. Yes.

"25. Could a person of ordinary height standing on the ground by said car, have seen underneath said ratchet-wheel where said brake-staff separated or broke, without stooping down for that purpose? A. Yes, by stooping over a little and close examination.

"26. Did said brake-staff break and separate by reason of a defect therein? A. Yes.

"27. If question 26 is answered 'Yes,' state what there was, if anything, about said brake-staff prior to the breaking of the same, to indicate that there was any defect in the same. A. There was a crack which could have been seen by a careful and ordinary inspector.

"28. Was there anything in the appearance of said brake-staff before the same broke to indicate that the same was defective? A. Same as 27.

"29. If question 28 is answered 'Yes,' state fully what there was in the appearance of said brake-staff before the same separated, to indicate that there was any crack or defect therein. A. There was a flaw about five-sixths of an inch indicating such a crack.

"30. Did any officer, agent or employé of the defendant company have any knowledge or notice that there was any defect in said brake-staff before the same separated at the time plaintiff was injured? A. They could have known by proper inspection.

"31. If question 30 is answered 'Yes,' give name of any such officer, agent or employé of the defendant who had such

knowledge or notice, and when and where he or they acquired or received the same. A. ———.

" 32. How long was plaintiff confined to his room by reason of the injuries by him sustained? A. About three months.

" 33. At the time plaintiff was injured, how much was he earning per month? No evidence. (By agreement.)

" 34. Was the plaintiff's leg amputated some ten inches below the knee? A. Yes.

" 35. For twelve months preceding the present time, has the plaintiff had an artificial leg or foot? A. Yes.

" 36. In the use of the same, does he require any other support or assistance than a cane carried in one of his hands? A. No.

" 37. By reason of said injury, has his general health been impaired? A. Yes, to some extent.

" 38. If question 37 is answered 'Yes,' state to what extent and in what manner. A. By change of weather and ulceration of the leg.

" 39. What amount, if any, has plaintiff paid out or contracted to pay out by reason of such injury? A. No evidence. (By agreement.)

" 40. If the jury find a general verdict for the plaintiff, what amount of such general verdict is allowed to plaintiff by reason of his loss of time as a result of said injury? A. No testimony.

" 41. To what extent has plaintiff's ability to earn money been impaired by reason of such injury? A. Don't know.

" 42. Is not the plaintiff at this time, and has he not been for more than one year last past, a healthy and active man? A. No.

" 43. If question 42 is answered 'No,' state in what respect he is at this time unhealthy. A. From the effects of the injury.

" 44. Was the injury to the plaintiff the result of the negligence in the state of Missouri of a fellow-servant of the plaintiff? A. It was the negligence of the defendant.

" 45. Was it not the usual and ordinary custom of defendant to have its cars inspected at all reasonable and proper times by careful and competent inspectors? A. It was the custom, but defendant failed to perform this duty in this case.

" 46. On December 11, 1882, and prior thereto, did not the defendant have in its employ careful and competent car inspectors? A. No.

" 47. If the jury find that the defendant failed to exercise

reasonable and ordinary care by reason of which the plaintiff was injured, state fully wherein the defendant failed to use reasonable and ordinary care. A. By negligence of ordinary and proper inspection.

" 48. Was the injury to the plaintiff the result of one of the ordinary risks and hazards of the business in which he was then employed? A. No.

"49. Prior to said injury to the plaintiff, did any agent, servant or employé of the defendant have any notice or knowledge of the defect, if any, in said brake-staff? A. Yes, they could have known by careful and ordinary inspection.

" 50. If question 49 is answered "Yes," give name of such agent, employé or servant who had such notice. A. Unknown to the jury.

"51. Was the injury to the plaintiff the result solely of the failure of the said defendant to exercise extraordinary care and diligence? A. Yes; it was the result of the defendant failing to exercise ordinary care.

" 52. At the time of and prior to such injury to the plaintiff, was said brake-staff in any manner out of repair otherwise than such defect or flaw therein just below the ratchet-wheel? A. No evidence of any other defect.

"53. If question 52 is answered "Yes," state in what manner the same was otherwise defective and out of repair. A. No answer.

"54. Was such flaw or defect in said brake-staff below the ratchet-wheel a latent flaw or defect? A. No.

"55. If question 54 is answered "No," state in what manner the same could have been discovered by the use of ordinary and reasonable care. A. By a careful and ordinary inspection.

"56. At the time of and shortly before the injury to the plaintiff, was said brake-staff apparently in good order? A. No.

"57. At the time said car passed through Kansas City, Missouri, on December 11, 1882, on its way to Leavenworth, Kansas, was the brake-staff thereon apparently in proper condition? A. No, it could not have been.

"58. If question 57 is answered "No," state in what particular the said brake-staff was not then apparently in good order and proper condition? A. By being cracked below the ratchet-wheel.

"59. If question 57 is answered "No," state the name of the officer or employé of the defendant to whom said brake-

staff appeared to be in bad order and condition. A. Not known to the jury.

"60. For what length of time had such flaw or defect in said brake-staff existed prior to December 11, 1882? A. It might have been weeks or months prior to the accident.

"61. Had said car been in constant use by the defendant for several months prior to December 11, 1882? A. Cannot answer to what extent.

"62. If question 61 is answered 'No,' state what portion of the time it had been in use by the defendant. A. Cannot answer."

The jury were asked, if they found a general verdict for the plaintiff, to state what sum was allowed for personal injury, and also were asked what sum they allowed for pain and suffering as the result of the injury. These questions were not answered.

The defendant filed its motion for judgment upon the answers of the jury to the particular questions of fact submitted, the general verdict of the jury to the contrary notwithstanding. This motion was overruled. Thereupon the defendant filed its motion for a new trial, which motion was also overruled. Judgment was then entered against the defendant and in favor of the plaintiff upon the verdict of the jury, for the sum of ten thousand dollars and all costs. Defendant excepted, and brings the case here.

*Everest & Waggener*, for plaintiff in error.

*Warner & Dean*, and *Thos. P. Fenlon*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action brought by John T. Dwyer against the Missouri Pacific Railway Company for for damages for personal injuries alleged to have resulted from the negligence of the defendant. The case was tried by the court and a jury, and judgment was rendered for the plaintiff for ten thousand dollars and costs of suit. From this judgment the defendant prosecutes a writ of error to this court.

The principal error complained of is, that the court refused

to sustain the demurrer of the defendant to the evidence of
the plaintiff; and also refused to instruct the jury to return a
verdict for the defendant.   On the trial, the following facts
appeared:  At the time of the injuries complained of—Decem-
ber 11, 1882—Dwyer was in the employ of the railway com-
pany as a brakeman on a freight train from the state line to
Atchison.   The injuries occurred near Pomeroy, a station on
the railway, seventeen miles from the state line in this state.
Dwyer came into Kansas City on train No. 24, at 4:10 P. M.;
was to go back at 6:30 P. M.; expecting to reach Atchison at
11:10 P. M.   On the night of December 11th, on account of
waiting for a special to be started out, Dwyer's train going
to Atchison—No. 37—was a little late.   The special started
ahead of the regular freight train, but after it had gone a little
distance it was noticed there was a broken drawhead on one
of the cars of that train.   Upon a signal, Dwyer went forward
and helped set the car out on a side-track; when he got back
to his train it was found that one of the cars on his train had
a broken drawhead, and a chain was sent for; the engineer
pulled his engine up and let the switch engine pull out the
car with the defective drawhead.   With the train were two
Iron Mountain cars loaded with lumber; these two cars were
set out with a switch engine; after this was done, the train
coupled up again; orders had been given for the train to take
cars to Wyandotte, Pomeroy, and Young.   The train stopped
at Wyandotte, and a car was taken off; the train then started,
and continued on until the engine whistled to stop at Pome-
roy; this was about 8:40 P. M.; Dwyer set the caboose brake,
and then went forward to set the brake on a coal car next to
him; the number of that car was 4657, M. K. & T.; the brake-
staff was on the north of the center of the end of the car; when
Dwyer took hold of the brake-staff to twist it around, it twisted
off in his hands, and he fell clear over the south side of the car,
two wheels of the car running over his right leg, crushing his
ankle and foot.   When the brake-staff broke and Dwyer fell
off the car, he held fast to the staff and carried it with him to
the ground; he was taken up, put into the caboose and brought

back to the state line, reaching there at 12 o'clock at night. The next day, Dr. Griffith, a surgeon in Kansas City, Mo., amputated his leg about ten inches below the knee.

In 1881 and 1882 the M. K. & T. railway was under the management of the Missouri Pacific Railway Company, and M. K. & T. cars were run over the road of that company. Car No. 4657 was loaded with coal at Rich Hill, Mo., December 10th or 11th, and at the time Dwyer fell under the wheels by the breaking of the staff or rod, it was being drawn along with the train to be taken off at Leavenworth. It is probable from the evidence, that the car and brake-staff had been in use by the company for six or seven years, and the staff or rod upon the car was similar to those on all the M. K. & T. cars. In April, 1880, at Sedalia, Mo., a new body was put upon the car, and new trucks under it. At that time it was the practice to make a careful examination of all cars being repaired, for all rotten timbers or defective irons, and when found, these were replaced by new timbers or irons. On September 13, 1882, at Atchison, the sides of this car were raised from sixteen to twenty-four inches.

It was not the duty of Dwyer to look over and inspect the brake-staffs on the cars of his train to ascertain if everything was in order, as that duty was imposed upon the car repairers or inspectors in the employ of the company at Atchison, Wyandotte, Sedalia, Rich Hill, and other stations. It does not appear that the railway company or any of its employés had actual notice or knowledge of the defect in the brake-staff before Dwyer fell under the wheels; and it is insisted by the counsel for the railway company that the defect was a latent one only, and could not have been discovered before the injury by the exercise of ordinary care and diligence. The brake-staff was used in setting the brakes of the car to which it was attached, by the brakeman taking hold of the wheel at the top with his hands, and using force to turn it around; the ratchet or cog-wheel of the brake-staff rested on the top of the floor of the freight car, four feet from the ground, and projected out from the brake-rod some three and one-half inches. The

brake-staff was one and one-half inches in diameter, and the ratchet-wheel six inches. There was a bracket or clasp to hold the staff or rod on the end of the car, five-eighths of an inch thick and two and one-half inches wide ; this was fastened on the end of the car with bolts and nuts against the bottom of the floor, the ratchet or cog-wheel being about three inches from the top of the iron bracket or clasp. The brake-staff or rod on the car at the time Dwyer attempted to set the brake was so defective as to be unsafe and dangerous to operate.

It has already been decided by this court that as between a railway company and its employés, the railway company is not necessarily negligent in the use of defective machinery, not obviously defective, but it is negligent in such cases only where it has notice of the defects, or where it has failed to exercise reasonable and ordinary diligence in discovering them and in remedying them. (*A. T. & S. F. Rld. Co. v. Wagner*, 33 Kas. 660.)

The jury found, among other things, that a person of ordinary height, standing on the ground by the car and stooping over a little, could have seen underneath the ratchet-wheel by close examination, where the brake-staff separated or broke, without stooping down for that purpose; also, that the crack or break in the staff could have been seen by a careful and ordinary inspector before the same broke off, and that the old crack or break in the brake-staff was such an one as could have been known by the railway company by the exercise of ordinary care. As a verdict must be founded upon evidence, and as the jury can find no fact not established by or fairly inferable from the testimony given, the question before us resolves itself into this : Was there evidence before the jury to support the special findings of fact ? If there was evidence to support these findings, then there was also evidence to support the general verdict in plaintiff's favor. It appears that the trial court has, by overruling the motion for a new trial, approved of the verdict and findings; therefore these must be accepted as just, if founded upon competent evidence. (*K. P. Rly. v. Kunkel*, 17 Kas. 145; *A. T. & S. F. Rld. Co. v. Holt*,

29 id. 149.) If there was evidence to support the special findings of fact and general verdict, the court committed no error in refusing to sustain the demurrer of the defendant, or in refusing to instruct the jury to return a verdict for the defendant.

It is not a question of the weight of evidence, or whether the trial court might not have set aside the verdict on a motion for a new trial. The inquiry is, whether there was sufficient evidence before the jury tending to prove the liability of the defendant. A careful examination of the record satisfies us that there was evidence in support of the special findings sufficient to justify them. There was evidence before the jury tending to show that it was necessary for the brake-staffs upon the cars to be kept in good order that they might be operated with safety; that these staffs or rods are a very important part of the machinery of the train; that it was the duty of inspectors of freight cars to examine carefully the trucks, drawheads and brake-staffs; that it was also the duty of the inspectors at Wyandotte to inspect the cars more thoroughly than at way stations; that the crack or break in the brake-staff was one-half an inch below the ratchet-wheel, and between the wheel and the bracket or clasp; that immediately after the injury to Dwyer it was discovered that the old crack or break was from two-thirds to five-sixths of the staff or rod, the jury placing it at five-sixths; that one-sixth only of the rod was a new break or crack; that this was fresh and bright; that the other—the old break—was all rusty; that an inspector standing between two cars or passing between them could see under the brake-staff if it was daylight; that the part of the brake-staff between the ratchet-wheel and bracket was exposed to view; that a crack or break like the one in the defective brake-staff would grow more and more visible with use, and that it was possible for the defect in the brake-staff to have been detected by the naked eye, even if the staff was straight.

W. H. Young arrived upon the ground shortly after the injury happened. Soon after, he took charge of the broken

brake-staff, and kept it securely boxed up until the trial. The broken brake-staff was before the jury upon the trial, for examination; Young described to the jury the appearance of the brake-staff when he first saw it, and the jury had full opportunity to inspect the staff or rod.

Again, the evidence tends to show that there were not sufficient inspectors at Wyandotte, considering the number of cars to be examined, to make a proper inspection of the cars passing through that station; that the thoroughness of the work depended upon the amount of time they had at their disposal and the labor to be done; that as better inspection was required there than at way stations, it was fairly inferable from the evidence that the inspectors at Wyandotte did not have sufficient time at their disposal to discover the defects in cars and machinery examined by them. A large amount of evidence was introduced on the part of the defendant tending to show that if brake-staffs attached to cars are straight and apparently all right it is the custom or practice of the inspectors to do nothing more than to make a casual examination, and that with such an inspection it was not probable a crack or break of the kind stated would be observable. We do not think that this practice or custom would relieve the defendant from liability, if the inspectors might have known by the exercise of reasonable and proper care on their part in examining the brake-staff before the injury, that the defect existed. Upon the grounds of public policy, a practice or custom which would permit the inspectors to let a car be operated with a defective brake-staff, when by the exercise of reasonable and proper care on their part the defect could have been discovered and remedied, can hardly be sustained as a valid custom. (*A. T. & S. F. Rld. Co. v. Holt*, supra; *Berg v. Railway Co.*, 50 Wis. 419.) If a brake-staff is not to be examined for visible defects or cracks until it is bent or broken, inspection would be almost useless; in any event it would be no protection for the safety of the employés using the brake. We do not intend to intimate that a railway company is responsible for hidden

2. Defective brake-staff; brakeman, injured; liability.

defects in its cars or machinery which cannot be discovered by careful inspection. We simply declare the right of the plaintiff to recover upon proof tending to show that by the exercise of reasonable care the company could have ascertained the break or crack in the brake-staff prior to the injury complained of.

In the case at bar the jury were expressly instructed that "the defendant was not required to exercise extraordinary care and diligence to discover defects in its machinery, but only ordinary care;" they were further expressly instructed that "if they found from the evidence that the defect in the brake-staff, if any existed at the time of the injury, was a latent defect and not discoverable by the use of ordinary care, then the jury must find for the defendant."

The case of *A. T. & S. F. Rld. Co. v. Wagner*, supra, has been referred to as conclusive against the right of the plaintiff. The distinction between the facts proved in that case and this is marked. In that case, the switchman had full knowledge of the defects in the coupling-pins, but the defect in the spring or appurtenances connected with the drawbar, if any existed, were wholly unknown and could not have been known by the exercise of reasonable and ordinary care. No negligence whatever was shown on the part of the railroad company.

The case of *Smith v. Railway Co.*, 42 Wis. 520, is confidently cited as authority for the reversal of the judgment of the trial court. In that case the brakeman injured was required in his employment "to look after and inspect the cars of his train every day, and see if everything was in order, and to report and repair defects if he found any." The car upon which the brake-shaft or rod broke was a new one, which had been taken into the train but two or three days prior to the accident, and the only negligence that the jury found the railway company guilty of "was in not applying a proper and sufficient test to the brake-rod." The court decided there was no testimony tending to show that the tests applied were inadequate or not in accordance with the most approved methods, and therefore it was held that the verdict was not

founded upon any evidence.    In that case, the question whether there was proper inspection after the car had béen put upon the railroad for use, was not before the jury for decision.    See in this connection, *Long v. Railway Co.*, 65 Mo. 225.    In the latter case, while a brakeman was in the act of drawing the brake of a freight car which was in motion, the upright rod broke, the brake-wheel came off, and the brakeman fell to the ground.    At the point in the rod where it broke there was a crack, which, however, was concealed.    There was a conflict of evidence as to whether this crack was new, or of long standing, and as to the diligence used by the railroad servants to discover the defect.    The brakeman recovered damages, and the supreme court of Missouri affirmed the judgment.

It is also urged for a reversal of the judgment, that as the petition alleged a cause of action at common law, if the railway company had in its employ careful and competent inspectors, it is not liable, even though the injury complained of was the result of their negligence; this upon the ground that the inspectors were fellow-servants or coëmployés of Dwyer.    The law is declared otherwise in this state.    (*A. T. & S. F. Rld. Co. v. Moore*, 29 Kas. 633; *St. L. & S. F. Rly. Co. v. Weaver*, 35 id. 412.)

" In all cases at common law a master assumes the duty toward his servant of exercising reasonable care and diligence to provide the servant with a reasonably safe place at which to work, with reasonably safe machinery, tools and implements to work with, with reasonably safe materials to work upon, and with suitable and competent fellow-servants to work with him; and when the master has properly discharged these duties, then at common law the servant assumes all the risks and hazards incident to or attendant upon the exercise of the particular employment, or the performance of the particular work, including those risks and hazards resulting from the possible negligence and carelessness of his fellow-servants and coëmployés,    And at common law whenever the master delegates to any officer, servant, agent, or employé, high or low, the performance of any of the duties above mentioned, which really devolve upon the master himself, then such officer, servant, agent or employé stands in place of the master, and becomes

a substitute for the master, a vice-principal, and the master is liable for his acts or his negligence to the same extent as though the master himself had performed the acts or was guilty of the negligence."

In this case the railway company, the master, delegated to inspectors the duty of inspecting the freight cars, which included the trucks, drawheads and brake-staffs

1. Car repairer, not co-employe with brakeman.

thereon, to see whether everything was in order and to repair defects, if any were obvious or visible; therefore the inspectors represented the company, and were not fellow-servants of the plaintiff, who was only a brakeman. (*St. L. & S. F. Rly. Co. v. Weaver*, supra; *Long v. Railroad Co.*, supra; *Condon v. Railway Co.*, 78 Mo. 567.)

Complaint is also made that the jury were not required to answer what sum they allowed for personal injury, and what they allowed for pain and suffering. The refusal to answer these questions, under the theory upon which the case was tried and the verdict rendered, is not material error.

The only element of which the verdict is composed, was the personal injury—nothing else. For this the jury returned ten thousand dollars as damages. The pain and suffering of

3. Excessive verdict.

Dwyer seem not to have been included therein. Under this aspect of the case, the verdict is excessive. There was no evidence that Dwyer was earning anything at the time of the injury, or that he had paid out or contracted to pay out anything by reason of the injury, or that he lost any time thereby. There was no evidence whatever as to what extent his ability to earn money was impaired.

The judgment must therefore be reversed on the sole ground that the damages awarded are excessive.

In many of the states appellate courts have adopted the practice, where the damages are excessive but the plaintiff is entitled to something substantial, of indicating the excess, and

4. Damages; court may state excess.

of giving or directing the trial court to give the plaintiff the option to remit the excess and allow him to take judgment for the residue. Such action on the part of the appellate court is no invasion of the

province of the jury, or of the rights of the defendant. (Civil Code, § 542; *Ranch v. Bass*, 5 Sneed, 366; *Baker v. City of Madison*, 62 Wis. 137; *McIntyre v. Railroad Co.*, 47 Barb. 515; *Murray v. Railroad Co.*, 47 id. 196; same case, affirmed in 48 N. Y. 655; *Kinsey v. Wallace*, 36 Cal. 462; *Hahn v. Sweazea*, 29 Mo. 199; *Belknap v. Railroad Co.*, 49 N. H. 358; *Collins v. City of Council Bluffs*, 35 Iowa, 432; *Town of Union v. Durkes*, 38 N. J. L. 21; *Haselmeyer v. McLellan*, 24 La. An. 629; *Boyd v. Brown*, 17 Pick. 453; *Watson v. Railroad Co.*, 38 Leg. Int. 138.)

We have considered all of the other questions presented in the briefs and upon the arguments, but do not think them important, and therefore make no comment thereon.

Adopting the practice now so universally followed by the appellate courts where the damages are considered excessive, to permit the plaintiff to elect to reduce his damages to a reasonsonable and proper sum rather than be required to accept a new trial, this cause will be remanded with directions that if within thirty days after the mandate of this court shall be filed in the trial court the plaintiff below remits three thousand dollars of the amount awarded by the verdict, judgment shall be rendered in his favor on the verdict, for seven thousand dollars and costs. Failing to do so, there must be a new trial.

All the Justices concurring.